UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

NEWARK VICINAGE

<u>NOT FOR PUBLICATION</u>

| | | |
|---|---|---|
| WALTER WOODS, Jr., | : | |
| | : | CIVIL NO. 14cv5774 (SRC) |
|       Plaintiff, | : | |
| | : | |
| | : | OPINION |
|   v. | : | |
| | : | |
| | : | |
| MRS. S. DAVIS ET AL., | : | |
| | : | |
|       DEFENDANTS, | : | |

Plaintiff is a civilly committed detainee under New Jersey's Sexually Violent Predator Act, confined at East Jersey State Prison. (Compl., ECF No. 1.) Plaintiff submitted a civil rights Complaint to this Court, and the Court granted Plaintiff's request to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915. (Order, ECF No. 2.) This case is now subject to preliminary review by the Court pursuant to § 1915(e)(2)(B).

When a person is proceeding *in forma pauperis* under 28 U.S.C. § 1915, the statute requires the court to "dismiss the case at any time if the court determines that" the action is frivolous or

1

malicious; the action fails to state a claim upon which relief may
be granted; or the action seeks monetary relief against a defendant
who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

## I.   THE COMPLAINT

The first defendant named in the complaint is Mrs. S. Davis,
identified as "Asst. Supt. of D.O.C.". (Compl., ECF No. 1 at
¶4(b)). Plaintiff alleged Davis placed residents under prison
policies ("10:A-code"), ordered employees to confiscate
cigarettes, and locked people up for having cigarettes. (Id.)
Plaintiff further alleged Davis authorized corrections officers to
destroy residents' cells if they complained of not being a
prisoner, overlooked abuse by officers against residents, and
stopped families from bringing food packages. (Id.)

The second defendant is Major S. Kaminski, identified as
"Admin Major D.O.C.". (Id. at ¶4(c)). Plaintiff alleged Kaminski
applied a new series of rules under the prison policy (10:A),
causing conflicts with treatment and the running of a treatment
center. (Id.) The third defendant is Merril Main, identified as
the Clinical Director of DHS. (Id. at 4(d)). Plaintiff alleged
Main ignored that the D.O.C. "put us residents under prison policy.
And signing off on every memo with new prison rules, applying them
to us." (Id.)

2

The fourth defendant is Shantay Adams, identified as "Unit Director - D.H.S."). (Id. at ¶4(e)). Petitioner alleged Adams knew that application of the D.O.C. prison policies to persons civilly committed as sexually violent predators violated the Patient Bill of Rights, and that Adams ignored abuse inflicted upon residents and their families by the D.O.C. (Id.)

Specifically, Petitioner alleged that on September 10, 2014, it was brought to "the Administrators['s] attention" that civil residents were not to be treated like prisoners because they were civilly committed under NJSA 30:4-27.24 et seq. (Compl., ECF No. 1 at 8.) Petitioner alleged that residents talked to DHS treatment staff eight hours per day, but for the remaining sixteen hours per day, they were treated like problem prisoners because the D.O.C. canceled groups while in session; the D.O.C. refused to allow staff to conduct groups; Unit Correction Officers instituted lock-downs, causing groups to be terminated; and D.H.S. Administrators replied only that they do not get involved in D.O.C. matters, and they had to follow D.O.C. rules on prison grounds. (Id. at 9-10.)

Petitioner alleged that by placing residents under prison policies, residents lost their rights to tobacco products and to food and water packages provided by visitors. (Id. at 10.) Petitioner alleged that when residents exercise their First

3

Amendment rights, the D.O.C. retaliates by having the residents locked up on false charges, with no hearing or investigation. (Id.)

Plaintiff requested the following injunctive relief: (1) reinstate rights of civilly committed residents by not applying D.O.C. prison policies to them; (2) transfer Plaintiff to a federally funded treatment facility with better treatment staff, where D.O.C. does not provide security; (3) appoint a special master to oversee the injunctions.

## II.   STANDARD FOR SUA SPONTE DISMISSAL

Plaintiff is proceeding *in forma pauperis* in this civil action. Therefore, this Court must review the complaint and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court must liberally construe the complaint in Plaintiff's favor because he is proceeding pro se. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court must also "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court

4

need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

In Ashcroft v. Iqbal, the Supreme Court revisited the standard for summary dismissal of a complaint that fails to state a claim upon which relief may be granted. 556 U.S. 662 (2009). The Court examined the pleading standard under Federal Rule of Civil Procedure 8(a)(2), noting that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 677. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint must be dismissed for failure to state a claim if it does not state a plausible claim for relief. Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Finally, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to

5

amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

## III. 42 U.S.C. § 1983

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To state a claim for relief under § 1983, a plaintiff must allege two things; first, the violation of a right secured by the Constitution or laws of the United States; and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

## IV. THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

Plaintiff is civilly committed under the New Jersey Sexually Violent Predator Act ("SVPA"). (ECF No. 1, Compl.) The New Jersey SVPA provides for the custody, care and treatment of involuntarily

6

committed persons who are deemed to be sexually violent predators
("SVP"). N.J.S.A. 30:4-27.24 et seq. The facilities designated for
SVPS are operated by the New Jersey Department of Corrections
("DOC"). N.J.S.A. 30:4-27.34(a). The New Jersey Department of
Human Services ("DHS") provides for their treatment.   N.J.S.A.
30:4-27.34(b).

In passing the SVPA, the New Jersey Legislature made specific
findings regarding SVPs. N.J.S.A. 30:4-27.25. The Legislature
noted that it was necessary to modify the previous civil commitment
framework and additionally separate SVPs from other persons who
have been civilly committed. Id. The SVPA defines a SVP as:

> a person who has been convicted, adjudicated
> delinquent or found not guilty by reason of
> insanity for commission of a sexually violent
> offense, or has been charged with a sexually
> violent offense but found to be incompetent to
> stand trial, and suffers from a mental
> abnormality or personality disorder that makes
> the person likely to engage in acts of sexual
> violence if not confined in a secure facility
> for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

The SVPA was amended in 2003, requiring that regulations be
promulgated jointly by the D.O.C. and the D.H.S., in consultation
with of the Attorney General, taking "into consideration the rights
of the patients as set forth in section ten of P.L.1965, c. 59 (C.

7

30:4-24.2) ... [to] specifically address the differing needs and
specific characteristics of, and treatment protocols related to,
sexually violent predators." N.J.S.A. 30:4-27.34(d). Those persons
committed under the SVPA shall receive annual review hearings.
N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil
commitment upon recommendation of the DHS or by the SVP's own
petition for discharge. N.J.S.A. 30:4-27.36.

## V.   ANALYSIS

### A.   Insufficient Factual Allegations

Several of Plaintiff's claims are insufficient because he
does not allege how he was personally injured by the alleged
unconstitutional conduct or that a direct injury was imminent.
See Goode v. Gioria, 590 F. App'x. 120, 121-22 (3d Cir.
2014)(dismissing complaint for lack of case or controversy that
"raise[d] concerns about the potential injuries that might arise
from various procedures at the institution, but fail[ed] to
allege that any actual injuries have occurred or are imminent.")
For instance, Plaintiff generally alleged that Defendant Davis
authorized corrections officers to destroy residents' cells if
they complained, overlooked abuse by officers against residents,
and stopped families from bringing food packages. Plaintiff did
not allege his own cell was destroyed or that there were any

8

other retaliatory attacks against him based on his exercise of a
constitutional right. Similarly, Plaintiff did not describe any
abuse he personally suffered at the hands of an officer, when
the abuse occurred, or how Defendant Davis was aware of such
abuse.

Plaintiff has not alleged sufficient facts to state a claim
for denial of property under the Due Process Clause of the
Fourteenth Amendment. To state such a claim, a plaintiff must
establish: (1) a deprivation of a constitutionally protected
liberty or property interest, (2) state action, and (3)
constitutionally inadequate process. See Rusnak v. Williams, 44
F. App'x 555, 558 (3d Cir. 2002). A protected property interest
is one in which a person has a legitimate claim of entitlement
to the property under the law, not just a unilateral expectation
of it. Kaminski v. Township of Toms River, 595 F. App'x 122, 125
(3d Cir. 2014).

Even assuming Plaintiff could establish a protected
property interest in cigarettes and receiving food packages from
visitors, he must also allege the process afforded to him for
deprivation of that interest did not comport with constitutional
requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).
Plaintiff has not alleged any facts to indicate there was no due

9

process afforded for the deprivation of cigarettes and receipt of food packages. These claims will be dismissed without prejudice.

**B.   Application of Prison Policies to SVPs**

Plaintiff generally alleges that application of prison policies to civilly committed sexually violent predators violates his constitutional rights because he is not a prisoner who is subject to punishment. Plaintiff's allegations are addressed under the Fourteenth Amendment's Due Process Clause. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982). In general, civilly committed persons may not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979); within the bounds of professional discretion, Youngberg, 457 U.S. at 321–22.

A civilly committed person's constitutional rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 320. Moreover, "due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are

10

committed." <u>Seling v. Young</u>, 531 U.S. 250, 265 (2001).

Under the New Jersey SVPA, SVPs are confined "in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26(b). Thus, treatment is not the sole purpose of confinement and not the sole consideration in the constitutional analysis.

> The role of the DOC in providing the housing for individuals committed under the Act does not necessarily establish a punitive statute. [The petitioner's] assertion of secure prison-like conditions is not the clear proof that the statutory scheme is so punitive as to render it a criminal statute. The intent and legislative purpose of the Act, admittedly a dual purpose, secure confinement and treatment does not render the SVPA unconstitutionally punitive per se.

<u>In the matter of the civil commitment of J.H.M.</u>, 367 N.J. Super. 599, 609 (N.J. Super. App. Div. Dec. 9, 2003).

A general allegation that an SVP cannot be subjected to a policy of the Department of Corrections because SVPs are not prisoners subject to punishment necessarily fails, because the Department of Corrections plays a role in the dual purpose of the New Jersey Act, secure confinement and treatment of SVPs. "Placement in a prison, subject to the institution's usual rules of conduct" does not, of itself, constitute punishment. <u>Allison v. Snyder</u>, 332 F.3d 1076, 1079 (7th Cir. 2003)(citing <u>Bell</u>, 441 U.S. 520). "If pretrial detainees may be subjected to the

11

ordinary conditions of confinement, as <u>Wolfish</u> holds, then so may persons detained before trial as sexually dangerous persons." <u>Id.</u> "Plaintiffs do not assert that their situation is worse in any material way than the situation in which ordinary pretrial detainees find themselves." <u>Id.</u>

If a particular D.O.C. policy bears some reasonable relation to providing for control over an SVP in a secure facility, the policy will withstand a constitutional challenge. <u>Seling</u>, 531 U.S. at 265. Petitioner has not asserted a particular provision under N.J.A.C. 10:A that bears no reasonable relation to providing control over SVPs in a secure facility. Thus, such claims will be denied without prejudice. Plaintiff's allegations that the D.O.C. regulations interfere with treatment will be addressed below.

## C.  Interferences with Treatment By Application of Prison Policies

The New Jersey SVPA has a dual purpose, and one of those purposes is to provide treatment designed to prevent an SVPA from committing a future sexual offense, and thereby obtain his/her release from confinement. Thus, civilly committed SVPs have a substantive due process right to treatment. <u>Leamer v. Fauver</u>, 288 F.3d 532, 545 (3d Cir. 2002); <u>Deavers v. Santiago</u>,

12

243 F. App'x 719, 772 (3d Cir. 2007). However, not every aspect of civil commitment has to be evaluated as a treatment program under Youngberg. Lane v. Williams, 689 F.3d 879, 883 (7th Cir. 2012). "A justified security policy is not . . . properly viewed as a treatment program that must be supported by an exercise of professional judgment. And that is so even if the security policy limits opportunities for treatment." Id.

Here, Plaintiff has not alleged sufficient facts to allow the Court to determine whether the security policies of the D.O.C. render treatment opportunities so inadequate as to violate due process.  Plaintiff has not alleged when or how frequently D.O.C. policies resulted in cancellation or other interference with his treatment program, or any facts that would allow the Court to determine how significant an effect the application of D.O.C. policies specifically had on Plaintiff's participation in treatment or that the treatment he did receive was inadequate. For this reason, these claims will be dismissed without prejudice.

STANLEY R. CHESLER
United States District Judge

13